KENNEDY, Justice.
Jill and Jane Beard petition this Court for a writ of mandamus directing Judge Robert R. Armstrong, Jr., of the Circuit Court of Coosa County, to vacate his order of February 8, 1989, granting the defendants’ motion to transfer this case from Coosa County to Talladega County. We grant the writ.
In 1985, Jill Beard, age 17, was injured when an automobile in which she was riding left a Talladega County road at a railroad crossing. She and her mother, Jane Beard, sued Talladega County, the Tallade-ga County Commission, Southern Railway Company, Central of Georgia Railroad Company and Norfolk Southern Corporation.[1] The complaint, filed in Coosa County, alleged negligent and/or wanton design, construction, and maintenance of the railroad crossing by the defendants.
Southern Railway filed a motion requesting that the case be transferred to Tallade-ga County. It admitted that it owned and operated the track where the wreck occurred, but contended that it neither owned any tracks nor operated any trains in Coosa County, where the suit was filed. It did admit, however, that it owned a controlling interest in the stock of Central of Georgia *385 Railroad Company, which did own tracks and operate trains in Coosa County.
In order to determine whether venue was proper in Coosa County, we must determine whether Central of Georgia was acting as an agent of Southern Railway.
In its order, the trial court held that venue was improper in Coosa County because there was no evidence before it to show that Southern Railway owned tracks or other property in Coosa County and there was insufficient evidence to conclude that Central of Georgia was acting as Southern Railway’s agent for purposes of determining venue.
When attempting to determine whether an agency relationship exists for purposes of determining venue, this Court applies a standard different from the one it applies when determining agency for liability purposes. Ex parte Charter Retreat Hospital, Inc., 538 So.2d 787 (Ala.1989). When determining venue, “the element of control, or lack thereof, of the principal over its agent is not determinative. If the entity is the ‘means’ by which the principal is able to do business in a particular county, then the entity is the ‘agent’ of the principal for venue purposes.” Id. at 789-90.
In Charter Retreat Hospital, supra, suit was filed in Jefferson County against Charter Retreat Hospital (“CRH”) and Charter Medical Corporation (“CMC”), a foreign corporation that is the parent of CRH. CRH operated a counseling center in Jefferson County, but its principal place of business was Morgan County. CMC moved to have the case transferred to Morgan County because, it contended, it did not do business in Jefferson County.
This Court found that CMC operated hospitals, like CRH, for profit and that the profit was returned by these hospitals directly to CMC. The Court concluded that CRH was the “means” through which CMC performed at least part of its business functions, based on the following reasoning:
“While not every act done within CMC’s corporate powers constituted doing business within the meaning of the statute, the act of receiving profits in the present case was most definitely done in the exercise of certain corporate functions for which CMC was created, and was not merely done within its corporate powers. Therefore, we answer in the affirmative our initial inquiry concerning whether the evidence is sufficient to support the trial court’s finding that Charter Retreat acted, for venue purposes, as an agent doing business in Jefferson County for CMC.”
CRH was a wholly owned subsidiary of CMC. In the present case, it is unclear whether Central of Georgia is wholly owned by Southern Railway. However, Southern Railway owns a controlling majority interest. The respondents argue that the “means” test should not apply to the present case because, they say, there is no evidence that Central of Georgia is a wholly owned subsidiary of Southern Railway. We disagree. A close reading of Charter Retreat Hospital reveals that the element that triggers the “means” test is not necessarily total ownership of a subsidiary; [2] rather, that ease shows that, when a court is determining venue, the primary *386 question to be answered is: What corporate purpose does the subsidiary serve for its owner?
S.L. McGinnis, the division superintendent for Norfolk Southern Corporation, testified in his deposition that Central of Georgia and Southern Railway share several corporate officers. In addition, he stated that a single safety officer served both Southern Railway in Talladega County and Central of Georgia in Coosa County. He also stated that a number of both corporations’ functions were consolidated after Southern Railway acquired a controlling interest in Central of Georgia in 1963.
Based on the evidence before us, we conclude that Central of Georgia was the “means” through which Southern Railway performed part of its business functions and was, for venue purposes, doing business as an agent of Southern Railway in Coosa County. Accordingly, we conclude that venue was proper in Coosa County and that the petition for a writ of mandamus is due to be granted.
WRIT GRANTED.
HORNSBY, C.J., and JONES, ALMON and SHORES, JJ., concur.

. Central of Georgia Railroad Company and Southern Railway Company are the parties relevant to this petition.

. In Charter Retreat Hospital, we quoted the following language from Ex parte Peabody Galion Co., 497 So.2d 1126 (Ala.1986):
" 'The term "agency” is frequently used to describe an arrangement which does not rise to the level of a principal/agent relationship and which is not governed by the law of respondeat superior. See Black’s Law Dictionary (rev. 4th ed. 1968); and 3 Am.Jur.2d Agency § 2, p. 510. Indeed, that term "is also often used in statutes or constitutional provisions in a more restricted sense than that commonly given it, and, where so used, its significance must generally be determined by a study of the context.” 2A C.J.S. Agency § 4, p. 557 (1972).
" ‘Whether an entity is an agent of a foreign corporation, as contemplated by the Constitution and the statute, is not tested by the standard for determining agency in the context of a principal/agent relationship with the attendant burden of the doctrine of respondeat superior (e.g., civil and criminal liability imputed to the principal for the wrongful acts of the agent committed within the scope of the agent’s employment). It is tested in the context of the language of the Constitution and the statute.’ ”
*386 In adopting this language from Peabody Gal-ion, the Court made no mention of the degree of ownership required to show agency.